JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-9631-GHK (JCx) | Date | May 7, 2013 |
|---|---|---|---|
| Title | *Rudy Gonzales v. City of Los Angeles, et al.* | | |

| **Presiding: The Honorable** | **GEORGE H. KING, CHIEF U. S. DISTRICT JUDGE** | |
|---|---|---|
| Beatrice Herrera | N/A | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiff: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:**    **(In Chambers) Order re:** Motions for Summary Judgment [Dkt. No. 44]

   This matter is before us on (1) Defendants City of Los Angeles ("the City") and Police Chief Charlie Beck's ("Chief Beck" and collectively with the City, "Defendants") Motion for Summary Judgment ("Defendants' Motion") and (2) Plaintiff Rudy Gonzales's ("Gonzales" or "Plaintiff") Cross Motion for Summary Judgment ("Plaintiff's Motion"). We have considered the papers filed in support of and in opposition to these Motions, and deem them appropriate for resolution without oral argument. L.R. 7-15. As the Parties are familiar with the facts, we will repeat them only as necessary. Accordingly, we rule as follows.

**I.    Background**

   The LAPD hired Gonzales in 1990. (Joint Statement of Unconverted Facts ("SUF") at P-2). On February 27, 2008, Gonzales injured himself at work when a stool he was sitting on broke. (Id. at P-10, 11). Gonzales began submitting doctor's notes to excuse him from qualifying to use his firearm. Sgt. Martin Baggesgard ("Baggesgard") supervised Gonzales and examined Gonzales's notes to determine whether they complied with department guidelines. (Id. at P-17). Baggesgard determined that Gonzales's notes did not comply because they did not state the specific month and year exempted (e.g., "no qualification for July 2008") and asked Gonzales to provide compliant notes. Gonzales did not provide notes with this specific language, and on September 17, 2008, Baggesgard issued a disciplinary comment card against him. (*See* id. at P-29; Baggesgard Depo. Exh. 34). On June 8, 2010, the LAPD held a Board of Rights ("BOR"), an administrative hearing, on two charges against Gonzales: (1) failure to qualify for his firearm and (2) insubordination for failing to provide doctor's notes as Baggesgard ordered. (*See* SUF at P-35, 38; D-16, 25). The BOR found Plaintiff guilty of insubordination and recommended a penalty of termination. (Id. at P-39, D-27). On June 24, 2010, Chief Beck adopted the BOR's recommendation and signed an order terminating Plaintiff retroactive to October 2009. (Id. at P-40). Plaintiff then filed a petition for a writ of mandate in Los Angeles County Superior Court ("Writ Court") to challenge his termination. (Id. at P-41). The Writ Court determined that the weight of the evidence did not support the BOR's finding that Gonzales was insubordinate, and on May 23, 2011, the Writ Court ordered that Gonzales be reinstated with backpay. (Id. at P-42). On January 26, 2012,

JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-9631-GHK (JCx) | Date | May 7, 2013 |
|---|---|---|---|
| Title | *Rudy Gonzales v. City of Los Angeles, et al.* | | |

Plaintiff applied for an order to show cause re: contempt in the Writ Court based on the City's failure to immediately reinstate him. (Id. at P-50). The Writ Court held a hearing on the contempt issue and the City's return of writ on February 28, 2012. (Id. at P-51). The Writ Court did not hold the City in contempt. (Id. at D-35). Defendants reinstated Gonzales as of December 2011 and paid all back pay that was due pursuant to the Writ Court's order. (Id. at P-51, 53; D-33).[1]

      Plaintiff asserts California FEHA claims and § 1983 and *Monell* claims. Plaintiff contends (1) he was terminated for discriminatory reasons based on disability, age, and worker's compensation, and he suffered harassment and retaliation; and (2) in particular, Baggesgard had discriminatory reasons to initiate discipline for the doctor's notes. To support these contentions, Plaintiff attests that Baggesgard "regularly call[ed] [him] and others, who were on light duty, malingerers." (Gonzales Decl. ¶ 32; *see also* Gonzales Depo. at 270:11-271:5 ("[A]s I recall, [Baggesgard said] . . . '[w]hy do you want to be along with all those malingerers,' or words to that effect.")). Plaintiff also contends that Defendants' delay in reinstating him was a due process violation for which both Chief Beck and the City are liable under § 1983 and *Monell*.

## II. Legal Standard

      We may grant summary judgment only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FRCP 56(a). "A party may move for summary judgment . . . [on] part of [a] claim." *Id.* As to materiality, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). On a motion for summary judgment, the district court's "function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249.

      The moving party bears the initial responsibility to point to the absence of evidence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006) (citation and quotation marks

---

[1] The papers are unclear about the precise date of Gonzales's reinstatement. According to the SUF, it is undisputed both that "Plaintiff had been retroactively reinstated as of December 15, 2011" and that the "LAPD reinstated Plaintiff to his position as a police officer on or about December 19, 2011." (SUF at P-51, D-33). Further, in the Joint Memo on these Motions, Plaintiff states that "[r]einstatement did not take place until January 29, 2012." (Joint Memo at 47). As this uncertainty in the date of Plaintiff's reinstatement is immaterial to the outcome of these Motions, as set forth fully below, it suffices to say that it is undisputed that Gonzales was reinstated sometime between December 2011 and January 2012.

*JS-6*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-9631-GHK (JCx) | Date | May 7, 2013 |
|---|---|---|---|
| Title | *Rudy Gonzales v. City of Los Angeles, et al.* | | |

omitted); *see also Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) ("[I]f the movant bears the burden of proof on an issue, . . . he must establish beyond peradventure *all* of the essential elements of the claim . . . to warrant judgment in [that party's] favor."). Where the nonmoving party has the burden of proof at trial, the moving party can carry its initial burden by "submit[ting] affirmative evidence that negates an essential element of the nonmoving party's claim . . . [or by] demonstrat[ing] . . . that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Celotex Corp.*, 477 U.S. at 323. The burden then shifts to the nonmoving party to point to specific facts showing a genuine issue for trial or show that the moving party's materials do not entitle it to summary judgment. *See* FRCP 56(c)(1); *see also In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex*, 477 U.S. at 324). This means that the evidence is such that "a jury could reasonably render a verdict in [the nonmoving party's] favor." *In re Oracle Corp. Sec. Litig.*, 627 F.3d at 387 (citing *Anderson*, 477 U.S. at 252). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

Moreover, "[t]he efficient management of judicial business mandates that parties submit evidence responsibly." *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 775 (9th Cir. 2002). Parties must designate specific facts and provide the court with their location in the record. *Id.*; *see* FRCP 56(c)(1)(A) (requiring parties to cite to "particular parts of materials in the record"). "General references [to evidence] without page or line numbers are not sufficiently specific." *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003). We will not "paw over the files without assistance from the parties." *Orr*, 285 F.3d at 775 (quoting *Huey v. UPS, Inc.*, 165 F.3d 1084, 1085 (7th Cir. 1999)). We "need consider only the cited materials," although we "may consider other materials in the record." FRCP 56(c)(3). It is within our discretion to refuse to consider evidence that the offering party fails to cite with sufficient specificity. *See id.; Orr*, 285 F.3d at 775; *see also Forsberg v. Pacific Nw. Bell Tel. Co.*, 840 F.2d 1409, 1418 (9th Cir. 1988) ("The district judge is not required to comb the record to find some reason to deny a motion for summary judgment.").

**III. Motions for Summary Judgment**

Plaintiff's only claims supporting federal subject matter jurisdiction are his § 1983 and *Monell* claims against the City and Chief Beck. We therefore analyze these claims first. As fully set forth below, we conclude that Defendants are entitled to summary judgment on the § 1983 and *Monell* claims. This resolves the only claims anchoring federal subject matter jurisdiction. Accordingly, we remand this action to the state court from which it was removed. *See* 28 U.S.C. § 1367(c) (district court may decline to exercise supplemental jurisdiction when it "has dismissed all claims over which it has original jurisdiction.").

**A. § 1983 and Monell *Standards***

Under 42 U.S.C. § 1983, a public employee may be individually liable for violating a person's constitutional or federal statutory rights while acting under color of State law. At trial the plaintiff bears the burden to prove that the defendants (1) performed or participated in an action, (2) under color of

JS-6
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-9631-GHK (JCx) | Date | May 7, 2013 |
|---|---|---|---|
| Title | *Rudy Gonzales v. City of Los Angeles, et al.* | | |

State law, (3) that violated the plaintiff's federal constitutional or statutory rights. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Souders v. Lucero*, 196 F.3d 1040, 1043 (9th Cir. 1999).

Local governments are not liable for their employees' constitutional violations under a respondeat superior theory. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978). To establish a city's liability ("*Monell* liability" or "municipal liability") – as opposed to a public employee's individual liability – a plaintiff must show at trial that "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Id.* at 690. A claim against a public official in his or her official capacity is the same as suing the government entity under a *Monell* theory. *Brandon v. Holt*, 469 U.S. 464, 471-72 (1985) ("In at least three recent cases arising under § 1983, we have plainly implied that a judgment against a public servant 'in his official capacity' imposes liability on the entity that he represents provided, of course, the public entity received notice and an opportunity to respond. We now make that point explicit.").

Plaintiff has the burden of proof as to each element of *Monell* liability and can generally establish municipal liability in three ways: First, he can identify an explicit policy that employees followed that led to the deprivation of his constitutional rights. *Monell*, 436 U.S. at 690. Second, he can show that even though no explicit policy can be identified, a permanent, widespread, and settled custom existed that employees followed that led to the deprivation of his constitutional rights. *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1444 (9th Cir. 1989); *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) ("Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy."). Third, he can show that the constitutional deprivation occurred pursuant to a directive by a decisionmaker with final authority to make binding policy. *See, e.g., Davis v. City of Ellensburg*, 869 F.2d 1230, 1235 (9th Cir. 1989).

### B.     *Defendants Are Not Liable under § 1983 or* **Monell** *for the Delay in Reinstatement*

Plaintiff appears to argue that the City's approximately seven month delay in reinstating him after the Writ Court's order violated due process and that Chief Beck is individually liable for this due process violation under § 1983.[2] Defendants respond that they are entitled to summary judgment on this

---

[2] It is undisputed that "Plaintiff's case against Defendant Charlie Beck is based solely on the following two actions: 1) that Chief Beck s[ig]ned the Order terminating Plaintiff following the Board of Rights; 2) failing to follow the Writ Court's Order to reinstate Plaintiff with backpay." (SUF D-43). In the papers, Plaintiff does not argue that Chief Beck's signing of the termination order independently violated due process. Rather, he argues that the City's "failure to comply with a valid and final court Order amounted to a denial of due process." (Joint Memo at 2). Even if Plaintiff had argued that Beck's signing the termination order violated due process, such argument would fail because (1) it is undisputed that Gonzales received a BOR – i.e., notice and an opportunity to be heard – before his termination and (2) there is no evidence that the members of the BOR were biased against him or that

*JS-6*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-9631-GHK (JCx) | Date | May 7, 2013 |
|---|---|---|---|
| Title | *Rudy Gonzales v. City of Los Angeles, et al.* | | |

claim because there is no evidence that Chief Beck personally knew of the reinstatement order and because Plaintiff received constitutionally adequate process in the Writ Court.

     We conclude that Defendants are entitled to summary judgment on Plaintiff's due process § 1983 claim for two reasons. First, under § 1983, "each Government official . . . is only liable for his or her own misconduct," which requires showing an intent to deprive constitutional rights. *Lacey v. Maricopa County*, 693 F.3d 896, 916 (9th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009)) (ellipses original). Here, as Defendants point out, "Plaintiff does not provide any evidence [that] Chief Beck personally knew of the reinstatement order or that Chief Beck deliberately failed to reinstate Plaintiff or pay him his back pay." (Joint Memo at 48).[3] Nor has Plaintiff pointed to sufficient circumstantial evidence to create a triable issue on whether Chief Beck intentionally delayed Plaintiff's reinstatement. Accordingly, Defendants are entitled to summary judgment on Plaintiff's due process § 1983 claim against Chief Beck.

     Even if Plaintiff established a triable issue on whether Chief Beck intentionally delayed Gonzales's reinstatement, Defendants would still be entitled to summary judgment because based on the undisputed facts, there was no due process violation (and thus no violation of federal constitutional or statutory rights to support § 1983 liability). The elements of a due process violation are: (1) Plaintiff had a constitutionally protected liberty or property interest (2) that Defendants deprived him of (3) without due process. *Knappenberger v. City of Phoenix*, 566 F.3d 936, 940 (9th Cir. 2009); *see also Haggard v. Curry*, 631 F.3d 931, 935 (9th Cir. 2010). The Parties do not dispute that Gonzales had a constitutionally protected liberty interest in his employment because he could only be terminated for cause. *See Walker v. City of Berkeley,* 951 F.2d 182, 183 (9th Cir. 1991). The Parties do not address whether the length of the delay in Gonzales's reinstatement – between 7 and 8 months – is a sufficient deprivation to trigger constitutional due process protections. We assume, without deciding, that the delay was a sufficient deprivation.

     Nonetheless, we conclude based on the undisputed facts that Plaintiff was not deprived of his employment "without due process." *See Barrett v. Smith*, 530 F.2d 829, 833-36 n.6 (9th Cir. 1976) ("But even though it has been determined that due process applies, 'the question remains what process is due.'") (citation omitted). It is undisputed that on May 23, 2011, the Writ Court ordered Gonzales's reinstatement. (SUF at P-42). Plaintiff argues that Defendants' failure to immediately reinstate him

---

the BOR otherwise employed constitutionally deficient procedures. *Cf. Garzon v. City of Bullhead*, 2011 WL 3471215, *2 (D. Ariz. 2011) (finding that the plaintiff failed to state a due process violation where plaintiff, a police officer, "[did] not allege that the post-termination hearing, in which he was reinstated to his former position with back pay, was conducted by someone other than an impartial decisionmaker").

     [3] In response to Defendants' argument, Plaintiff cites state authorities, such as *DeJung v. Superior Court*, 169 Cal.App.4th 533, 546 (Ct. App. 2008), which hold that an employer may be directly liable under the FEHA. These authorities are irrelevant to the federal standards for § 1983 liability.

**JS-6**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-9631-GHK (JCx) | | Date | May 7, 2013 |
|---|---|---|---|---|
| Title | *Rudy Gonzales v. City of Los Angeles, et al.* | | | |

pursuant to the Writ Court's order violated due process. The issue is therefore what process is due to obtain compliance with a court order.

Plaintiff cites no specific authority for the proposition that Defendants' failure to immediately comply with the Writ Court's order violated due process despite the contempt proceedings available to him in that court. In general, " '[d]ue process,' unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances." *Cafeteria & Restaurant Workers v. McElroy*, 367 U.S. 886, 895 (1961) (citation omitted). Rather, it is based on "history, reason, [and] the past course of decisions." *Id.* "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972); *see also Hannah v. Larche*, 363 U.S. 420, 442 (1960) (explaining that the "exact boundaries [of due process] are undefinable, and its content varies according to specific factual contexts").

Based on these principles, we conclude that the process due to enforce a court order is contempt proceedings in the court that issued the order. In general, "[c]ivil contempt is characterized by the court's desire to *compel obedience to a court order* . . . or to compensate the contemnor's adversary for the injuries which result from the noncompliance." *Falstaff Brewing Corp. v. Miller Brewing Co.*, 702 F.2d 770, 778 (9th Cir. 1983). Contempt proceedings are "the procedures which have traditionally been associated with the judicial process" in the specific factual context at issue here: a party wishes to be heard on compliance with a court order. *Hannah*, 363 U.S. at 442. Such proceedings are consistent with what "the particular situation demands" – a hearing before a neutral party on whether a litigant has complied with a court order – and therefore satisfy due process. *Morrissey*, 408 U.S. at 481. Plaintiff fails to explain what other process could reasonably have been due, and we can imagine no such additional process ourselves. Did the constitution require notice and a separate administrative hearing about the timing of Plaintiff's reinstatement after the Writ Court's order? We think not.

It is undisputed that Plaintiff availed himself of contempt proceedings in the Writ Court,[4] and there is no evidence of bias or procedural irregularities during the contempt proceedings. Thus, in light of the foregoing, Defendants are entitled to summary judgment on Plaintiff's due process § 1983 claim for the independently sufficient reason that Plaintiff received the process he was due in the Writ Court. Finally, because there is no constitutional violation to support this § 1983 claim, the City cannot be liable under *Monell*.

### C. *Defendants Are Not Liable Under § 1983 or* **Monell** *for Baggesgard's Purported Discrimination*

---

[4] On January 26, 2012, Plaintiff applied for an order to show cause re: contempt in the Writ Court for the City's failure to reinstate Gonzales. (SUF at P-50). The Writ Court held a hearing on the contempt proceedings and the City's return of writ on February 28, 2012. (Id. at P-51). The Writ Court did not hold the City in contempt. (Id. at D-35).

JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-9631-GHK (JCx) | Date | May 7, 2013 |
|---|---|---|---|
| Title | *Rudy Gonzales v. City of Los Angeles, et al.* | | |

Plaintiff does not coherently argue a theory by which Defendants could be liable under § 1983 or *Monell* for Baggesgard's purported discrimination. To the extent Plaintiff argues that Defendants are liable for an equal protection violation, we conclude that this argument fails and Defendants are entitled to summary judgment.

### 1. Chief Beck is Not Liable Under § 1983

Plaintiff's equal protection theory against Chief Beck fails for two reasons. First, "[a] supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them. There is no respondeat superior liability under section 1983." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *see also Preschooler II v. Davis*, 479 F.3d 1175, 1183 (9th Cir. 2007) (explaining that "'[s]upervisory liability is imposed against a supervisory official in his individual capacity for *his own culpable action* or inaction in the training, supervision, or control of his subordinates, for his acquiescence in the constitutional deprivations of which the complaint is made, or for conduct that showed a reckless or callous indifference to the rights of others'") (emphasis added). Further, "to prevail on an Equal Protection claim brought under § 1983," Plaintiff must establish at trial that "'the defendants acted with an intent or purpose to discriminate against [him] based upon membership in a protected class.'" *Hartmann v. California Dept. of Corrections and Rehabilitation*, 707 F.3d 1114, 1123 (9th Cir. 2013). Although Gonzales has provided evidence of Baggesgard's discriminatory intent, he has provided no evidence that Chief Beck knew of, directed, or participated in Baggesgard's purported discrimination or that Chief Beck independently had discriminatory intent. Rather, it is undisputed that Plaintiff's § 1983 claim is "based solely on the following two actions: 1) that Chief Beck s[ig]ned the Order terminating Plaintiff following the Board of Rights; 2) failing to follow the Writ Court's Order to reinstate Plaintiff with backpay." (SUF D-43).[5] Because Plaintiff has produced no evidence of Chief Beck's discriminatory intent, such as his knowledge of Baggesard's purported discriminatory comments, Defendants are entitled to summary judgment on the equal protection § 1983 claim. *See Allen v. Hubbard*, 2011 WL 6202910, *3 (C.D. Cal. 2011) (dismissing claims against supervisor for lack of personal participation where plaintiff failed to allege that the supervisor "acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class").

Second, Plaintiff has failed to "raise an issue of triable fact as to whether defendants intentionally treated the plaintiff differently from similarly situated individuals," i.e., individuals who submitted similar doctor's notes that the LAPD accepted without imposing similar discipline. *McCollum v. California Dept. of Corrections and Rehabilitation*, 647 F.3d 870, 881 (9th Cir. 2011) (citing *Flores v. Morgan Hill Unified Sch. Dist.*, 324 F.3d 1130, 1134 (9th Cir. 2003)); *see also Hartmann*, 707 F.3d at 1123 ("The Equal Protection Clause requires the State to treat all similarly

---

[5] It is not clear how Chief Beck's failure to immediately reinstate Plaintiff is relevant to his equal protection theory, especially given Plaintiff's failure to produce evidence that Chief Beck intentionally delayed the reinstatement. Rather, the delay appears principally relevant to the due process theory discussed above.

*JS-6*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-9631-GHK (JCx) | Date | May 7, 2013 |
|---|---|---|---|
| Title | *Rudy Gonzales v. City of Los Angeles, et al.* | | |

situated people equally."). Gonzales has not even identified any similarly situated individuals, let alone explained how such individuals were treated differently. For this reason too, Defendants are entitled to summary judgment on Plaintiff's equal protection § 1983 claim.

### 2. The City is Not Liable Under *Monell*

Because there is no triable issue on an equal protection violation, the City cannot be liable under *Monell*. Even if there were a triable issue on a constitutional violation, however, Plaintiff's *Monell* claim would still fail. Plaintiff has failed to demonstrate a triable issue on whether the City had a policy or custom of violating its employees' equal protection rights. The sole argument for *Monell* liability appears to be based on Chief Beck's role in Gonzales's termination, i.e., his signing of the termination order. (*See* Joint Memo at 48). Although *Monell* liability applies where a plaintiff was injured pursuant a final policymaker's decision, a "plaintiff must adduce evidence that the final policymaker approved both a subordinate's decision *and the improper basis for that decision* to survive summary judgment." *Ellins v. City of Sierra Madre*, 710 F.3d 1049, 1066-67 (9th Cir. 2013) (citing *Christie v. Iopa*, 176 F.3d 1231 (9th Cir. 1999) (emphasis added)).[6] Here, Plaintiff has produced no evidence that Chief Beck knew or approved of Baggesgard's purported discriminatory intent in initiating discipline for the doctor's notes. Accordingly, Defendants are entitled to summary judgment on Plaintiff's equal protection *Monell* claim against the City.

### IV. Conclusion

In light of the foregoing, Defendants' Motion is **GRANTED** to the extent it seeks summary adjudication of Plaintiff's § 1983 and *Monell* claims. Plaintiff's Motion is **DENIED** to extent it seeks summary adjudication of his § 1983 and *Monell* claims. Because we have resolved Plaintiff's federal claims,[7] the only claims over which we have original jurisdiction, we decline to exercise jurisdiction

---

[6] It appears that Chief Beck is a "final policymaker." *Harper v. City of Los Angeles*, 533 F.3d 1010, 1025-26 (9th Cir. 2008) (explaining that a jury could infer *Monell* liability from a Police Chief's praise of the prosecution against the plaintiffs related to an allegedly falsified investigation after they had been acquitted on all charges).

[7] The heading for the Second Amended Complaint's ("SAC") Second Cause of Action refers to "42 U.S. C §1981 AND 1983 [sic]." (SAC at 7). This is the only reference in the SAC to § 1981, which prohibits race discrimination in the "benefits, privileges, terms and conditions" of employment. 42 U.S.C. § 1981(b); *Metoyer v. Chassman*, 504 F.3d 919, 935 (9th Cir. 2007). The Second Cause of Action is otherwise pleaded as § 1983 and *Monell* claims. It alleges that Defendants "deprived plaintiff of his constitutional rights," cites cases addressing due process and equal protection, refers to § 1983, and appears to plead elements of *Monell* liability. (SAC ¶¶ 28-36). Further, the Joint Memo on the Motions for Summary Judgment does not mention § 1981. (*See* Joint Memo at viii-ix). Rather, the Parties argue § 1983 and *Monell*. (*See* Joint Memo at 44-48). Finally, § 1981 encompasses only race discrimination, which is not at issue here. *Leiland v. City and County of San Francisco*, 576 F.Supp.2d

*JS-6*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-9631-GHK (JCx) | Date | May 7, 2013 |
|---|---|---|---|
| Title | *Rudy Gonzales v. City of Los Angeles, et al.* | | |

over Plaintiff's remaining state law claims. *See* 28 U.S.C. § 1367(c); *Lacey v. Maricopa County*, 693 F.3d 896, 940 (9th Cir. 2012) (explaining that "[w]here a district court 'dismiss[es] every claim over which it had original jurisdiction,' it retains 'pure[ ] discretion[ ]' in deciding whether to exercise supplemental jurisdiction over the remaining claims") (citation omitted); *Dyack v. Commonwealth of Northern Mariana Islands*, 317 F.3d 1030, 1037-38 (9th Cir. 2003) ("In light of the district court's grant of summary judgment to defendants on [the plaintiff's] only federal claim, the court did not abuse its discretion in dismissing the state-law claims."); *see also Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 561 (9th Cir. 2010) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine–judicial economy, convenience, fairness, and comity–will point toward declining to exercise jurisdiction over the remaining state-law claims.") (citation and internal quotation marks omitted) (alteration original). Because we decline to exercise supplemental jurisdiction over Plaintiff's state law claims, we decline to rule on the Motions to the extent they seek summary adjudication of such claims. This action is hereby **REMANDED** to the state court from which it was removed.

    **IT IS SO ORDERED.**

| | : | |
|---|---|---|
| Initials of Deputy Clerk | IR for Bea | |

---

1079, 1080 (N.D. Cal. 2008) (explaining that "the 1981 claim may be based upon race only"); *Flores v. Flying J., Inc.*, 2010 WL 785969, *4 (S.D. Ill. 2010) (explaining that "[s]ection 1981 prohibits discrimination on the basis of race only, in that '[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens . . . .'"). Accordingly, we conclude that an offhand citation to 42 U.S.C. § 1981 in a cause of action otherwise pleaded and argued as a § 1983/*Monell* claim is insufficient to state a § 1981 claim, especially where it appears that § 1981 does not apply because race discrimination is not at issue. The only federal claims in the SAC are therefore the § 1983 and *Monell* claims.